Hassan A. Zavareei (California Bar No. 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW- Suite 1000
Washington, D.C 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
Email hzavareei@tzlegal.com

Kristen L. Sagafi (California Bar No. 222249)
**TYCKO & ZAVAREEI LLP**
483 Ninth Street, Suite 200
Oakland, CA 94607
Telephone: (510) 254-6808
Facsimile: (510) 210-0571
Email: ksagafi@tzlegal.com

Jonathan M. Jagher (*Pro Hac Vice* to be filed)
Jeffrey L. Kodroff (*Pro Hac Vice* to be filed)
John A. Macoretta (*Pro Hac Vice* to be filed)
Diana J. Zinser (*Pro Hac Vice* to be filed)
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19312
Telephone: (215) 496-0300
Facsimile: (215) 496-6611
Email: JJagher@srkattorneys.com
Email: JKodroff@srkattorneys.com
Email: JMacoretta@srkattorneys.com
Email: DZinser@srkattorneys.com

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CONDELLES III, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.  18-2727 |
| v. | |
| FACEBOOK, INC., | (JURY TRIAL DEMANDED) |
| Defendant. | **CLASS ACTION COMPLAINT** |

Plaintiff John Condelles III ("Plaintiff") brings this putative class action on behalf of himself and all others similarly situated (the "Class" as defined below) against Facebook, Inc., ("Facebook" or "Defendant") and upon personal knowledge, information, and belief, alleges as follows:

I.      INTRODUCTION

1.      This is a class action for damages suffered by Plaintiff and the proposed Class of people who accessed Facebook on mobile devices using the Android operating system ("Android users).

2.      Facebook operates a social networking website that allows people to communicate with family, friends, and coworkers.  Facebook has developed technologies that facilitate the sharing of information, photographs, website links, and videos.  Facebook users have the ability to share and restrict information based on their own specific criteria.  By the end of 2017, Facebook had more than 2.2 billion active users.  Facebook's stated mission is "to give people the power to build community and bring the world closer together.  People use Facebook to stay connected with friends and family, to discover what's going on in the world, and to share and express what matters to them." In recent years, however, Facebook's stated business model has morphed into a data aggregation and marketing scheme disguised as a social network.

3.      Facebook provides multiple mechanisms through which users may access its social media product.  These include, but are not limited to, a website accessed through a computer's web browser, Facebook mobile device applications ("apps") on various operating systems (e.g., Android, iOS), and auxiliary applications such as Facebook Messenger and Facebook Lite for mobile devices.

4.      Facebook's marketing of its apps has led many Facebook users to install its applications on their mobile devices.

5.      When installing such apps, Facebook users are provided with a terms of service and/or privacy notice on the screen of their mobile device.  These essentially inform users that the information they post to Facebook will be used by the company in accordance with the users' privacy settings as specified by the user.  The terms of service and privacy notice materials *do not inform* (and in the past have not informed) the ordinary and reasonably attentive Facebook user that

installing the application on a mobile device will result in the logging of all the user's phone and text communications—including recipients, dates of communication, length of communication, and mode of communication—on Facebook's servers for Facebook's own use.

6.      On mobile devices utilizing the Android version of Facebook apps (or "Android mobile devices"), Facebook has collected and stored information in a scope and manner beyond that which users knowingly authorized.  The practice is ongoing.  This activity includes assessing users' call and text histories (including metadata such as the names and number of persons contacted), the times of such contacts, and the lengths of such contacts, hereafter referred to as "Personal Communications Information."

7.      Users' Personal Communications Information has been and continues to be stored to Facebook's own servers.

8.      Prior to April 2018, Facebook only disclosed that they could access and collect data from Android users' address books.  Facebook did not disclose that it could and did access and collect Android users' call logs and text message logs and then send it to Facebook's private servers for storage.

9.      In versions of the Android operating systems prior to Android Version 4.1, users installing the Facebook app on their Android mobile device were prompted to grant Facebook access to their "Contact List." By granting this access, Android users were also automatically and unknowingly granting Facebook permission to "scrape," or automatically gather, Android users' call and text logs.  In other words, Facebook scraped *years*' worth of call and text data, including whether the call was "incoming" "outgoing," or "missed;" the data and time of each call; the number dialed; the individual called; and the duration of each call.

10.     Facebook took advantage of the technical structure of different versions of the Android operating system to obtain users' Personal Communications Information with misleadingly minimal and insufficient notice, such that ordinary Facebook users did not understand that they were allowing Facebook the ability to download, save, and utilize their Personal Communications Information.

11.     Later versions of the Android operating system required additional notice by Facebook applications to obtain Personal Communications Information.  Even then, Facebook did not take steps to make it plain to ordinary and reasonably attentive users that their Personal Communications Information had been and would continue to be gathered, stored, and used by Facebook.  Instead, ordinary and reasonably attentive Facebook users understood only that their posts and communications activity on the Facebook website would be published in keeping with their Facebook accounts' privacy settings.

12.     Facebook's unauthorized taking and use of its users' Personal Communications Information presents several wrongs, including a consumer bait-and-switch, an invasion of privacy, wrongful monitoring of minors, and potential attacks on privileged communications in the context of Facebook users who use their Android mobile devices (but not Facebook) to communicate in the context of protected relationships including but not limited to that of attorney/client, doctor/patient, etc.

## II.     PARTIES

13.     At all times relevant to this matter, Plaintiff John Condelles III was a resident and citizen of Connecticut.  Plaintiff joined Facebook in or around 2008.  He accesses his Facebook account using the Facebook application on his Samsung S7 Edge mobile device, which he has had since approximately 2016. This mobile device uses the Android operating system.  Plaintiff's prior mobile devices also used the Android operating system. Plaintiff installed Facebook Messenger and Facebook Lite for personal use. Because Facebook omitted that it scrapes call and text logs, Plaintiff did not know that Facebook Messenger and Facebook Lite would scrape Plaintiff's call and text logs. Plaintiff would not have installed Facebook Messenger and Facebook Lite, or would have done so on different terms, if Plaintiff knew that Facebook had a practice of scraping call and text logs. Even though Plaintiff did not consent to Facebook scraping call and text logs, upon information and belief, Facebook did so and then monetized the data collected from Plaintiff and other class members for advertising purposes.

14.     Defendant Facebook, Inc. is a corporation organized under the laws of the State of Delaware.  Facebook's principal offices are located at 1601 Willow Road, Menlo Park, California,

94025.  Its registered agent for service of summons is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

**III.    JURISDICTION AND VENUE**

15.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and Plaintiff and other members of the Class are citizens of different states from Defendant.

16.    Venue is proper in this Court pursuant to Facebook's Terms of Service, which provides:

> [A]ny claim, cause of action, or dispute . . . that arises out of or relates to these Terms or the Facebook Products ('claim') . . . will be resolved exclusively in the U.S. District Court for the Northern District of California . . . and that the laws of the State of California will govern these terms and any claim, without regard to conflict of law provisions.

Facebook Terms of Service, at https://www.facebook.com/legal/terms/update?ref=old_policy (accessed April 25, 2018).

17.    Venue is further proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District and because Facebook is authorized to conduct business in this District; has intentionally availed itself of the laws and markets within this District; does substantial business in this District; and is subject to personal jurisdiction in this District.

**IV.    SUBSTANTIVE ALLEGATIONS**

18.    On March 24, 2018, ArsTechnica.com, a respected online source for technology news, published an article detailing that Facebook "scraped call, text message data for years from Android phones."  (https://arstechnica.com/information-technology/2018/03/facebook-scraped-call-text-message-data-for-years-from-android-phones/)  As set forth in the article, Facebook's Android-based application for accessing its services included functions that would collect the phone numbers to which a user's phone connected, whether via voice call or text.  The Facebook phone application transmitted to Facebook's corporate servers information about each such communication on the subject phone, including but not necessarily limited to: the phone numbers and identities of the

persons taking part in communications, the date and time of communications, and the length of communications.

19.     Such data collection was set as part of the default installation of the Facebook application, such that users had to take affirmative action to opt out to prevent their phones from being subject to such monitoring and reporting.  Coupled with this, Facebook also did not provide notice of such monitoring and reporting in a way that ordinary and reasonably attentive users would understand.  This resulted in a vast number of Facebook users being duped into participating in a monitoring system that they would not have agreed to had they first been told in plain language what data was being collected, and what was being done with it.

20.     By utilizing such data collection methods, Facebook has been able to amass a set of data matching people to their phone numbers, but also matching people to one another.  By matching the phone numbers to other information, knowable by Facebook.com posts and other available information, Facebook can map relationships and, to a degree, the nature and type of relationships between affected Android users.  Facebook then incorporates these data into the profiles it maintains for its users, which it then monetizes via advertising.

21.     Ordinary and reasonably attentive Facebook users, including Plaintiffs and class members, were not given enough information to knowingly opt into such a data collection program, and would not have done so if they had first been informed of the system in ordinary language.

22.     To the degree Facebook did disclose its system of gathering Personal Communications Information, it did so through deceptive and misleading language that did not put users on notice of what was actually being done by the company.  For instance, Facebook explained in or about 2016 to 2017 that it collected data "to help friends find each other."

23.     Millions of individuals use Facebook through their Android-based phones.

24.     On many Android phones, Facebook is preinstalled as a default application and cannot be removed by individuals who purchased the phone, even if they would not otherwise choose to opt into Facebook's system of collecting and storing users' Personal Communications Information.

25.    In 2011, Facebook entered into a consent decree with the U.S. Federal Trade Commission ("FTC") in which the company agreed to obtain user consent for certain changes to privacy settings.  The decree arose from federal allegations that the company deceived consumers and forced them to share more personal information than they intended.  Yet Facebook still continued in its policy of collecting Personal Communications Information as alleged herein, reflecting an ongoing intent to deceive and take advantage of Facebook users.

26.    Such conduct was in violation of Facebook's own Data Use Policy on its website, which, until recently, provided in part:

*Date of Last Revision: September 29, 2016*

\*\*\*

**I. What kinds of information do we collect?**

Depending on which Services you use, we collect different kinds of information from or about you.

- **Things you do and information you provide.**  We collect the content and other information you provide *when you use our Services*, including when you sign up for an account, create or share, and message or communicate with others.  This can include information in or about the content you provide, such as the location of a photo or the date a file was created.  *We also collect information about how you use our Services*, such as the types of content you view or engage with or the frequency and duration of your activities.
- **Things others do and information they provide.**  We also collect content and information that other people provide *when they use our Services*, including information about you, such as when they share a photo of you, send a message to you, or upload, sync or import your contact information.
- **Your networks and connections.**  We collect information about the people and groups you are connected to and how you interact with them, such as the people you communicate with the most or the groups you like to share with.  *We also collect contact information you provide if you upload, sync or import this information (such as an address book) from a device.*
  \*\*\*
- **Device information.**  We collect information from or about the computers, phones, or other devices where you install or access our Services, depending on the permissions you've granted.  We may associate the information we collect from your different devices, which helps us provide consistent Services across your devices.  *Here are some examples of the information we collect*:

- o  Attributes such as the operating system, hardware version, device settings, file and software names and types, battery signal and strength, and device identifiers.
- o  Device locations, including specific geographic locations, such as through GPS, Bluetooth, or WiFi signals.
- o  Connection information such as the name of your mobile operator or ISP, browser type, language and time zone, mobile phone number and IP address.

https://web.archive.org/web/20180102034534/www.facebook.com/full_data_use_policy

(accessed April 24, 2018) (emphases in italics added).

27.    Facebook's Data Use Policy from before April 2018 was misleading because it disclosed only that it was collecting contact information from Android users' address books.  It did not disclose that it was collecting call and text logs, even though it was doing so.

28.    Facebook's Data Use Policy from before April 2018 was also misleading because it stated that it could collect contact information from an address book "*if* you upload, sync, or import it."  It did not explain that opting in was the default setting, nor did it link to any instructions on how to disable it.

29.    Facebook recently updated its Data Use Policy effective April 19, 2018—shortly after news of its data "scraping" activities was made public—to admit that it engaged in "scraping" Personal Communications Information such as text data and call logs from Android mobile devices:

**What kinds of information do we collect?**

To provide the Facebook Products, we must process information about you.  The types of information we collect depend on how you use our products. . . .

**Things you and others do and provide.**
- **Information and content you provide.**  We collect the content, communications and other information you provide *when you use our Products*, including when you sign up for an account, create or share content, and message or communicate with others.  This can include information in or about the content you provide (like metadata), such as the location of a photo or the date a file was created. . . .
  ***
- **Networks and connections**.  We collect information about the people, Pages, accounts, hashtags and groups you are connected to and how you interact with them across our Products, such as people you communicate with the most or groups you are part of.  *We also collect contact information if you*

*choose to upload, sync or important from a device (such as an address book or call log or SMS log history) . . . .*
***

**Device Information**
As described below, we collect information from and about the computers, phones, connected TVs and other web-connected devices you use that integrate with our Products, and we combine this information across different devices you use.  For example, we use *information collected about your use of our Products on your phone* to better personalize the content (including ads) or features you see *when you use our Products* on another device, such as your laptop or table, or to measure whether you took an action in response to an ad we showed you on your phone on a different device.

*Information we obtain from these devices includes*:

- **Device attributes:** information such as the operating system, hardware and software versions, battery level, signal strength, available storage space, browser type, app and file names and types, and plugins.
- **Device operations:** information about operations and behaviors performed on the device, such as whether a window is foregrounded or backgrounded, or mouse movements (which can help distinguish humans from bots).
- **Identifiers:** unique identifiers, device IDs, and other identifiers, such as from games, apps or accounts you use, and Family Device IDs (or other identifiers unique to Facebook Company Products associated with the same device or account).
- **Device signals:** Bluetooth signals, and information about nearby Wi-Fi access points, beacons, and cell towers.
- **Data from device settings:** information you allow us to receive through device settings you turn on, such as access to your GPS location, camera or photos.
- **Network and connections:** information such as the name of your mobile operator or ISP, language, time zone, mobile phone number, IP address, connection speed and, in some cases, information about other devices that are nearby or on your network, so we can do things like help you stream a video from your phone to your TV.
- **Cookie data:** data from cookies stored on your device, including cookie IDs and settings.

https://www.facebook.com/about/privacy/update (accessed April 24, 2018) (emphases in italics added).

30.     It was only after the ArsTechnica article revealed these "scraping" practices that Facebook disclosed in their updated April 19, 2018 Data Use Policy that they could and did collect information from users' call logs and text logs.

9

31.     Facebook's updated April 19, 2018 Data Use Policy continues to be misleading because the instructions for disabling or opting out of the collection of Personal Communications Information are confusing, buried in several hyperlinks from the Data Use Policy, and contain multiple steps.

32.     For example, the statement from the updated April 19, 2018 Data Use Policy, "We also collect contact information if you chose to upload, sync or import it from a device (such as an address book or call log or SMS log history) [hyperlink]" contains a hyperlink to a page containing instructions on how to upload one's contacts to Facebook from a mobile device. *See* http://www.facebook.com/about/privacy/update (accessed May 3, 2018).

33.     The page with instructions on uploading contacts contains yet another hyperlink: "Learn how to turn off contact uploading." *See* https://www.facebook.com/help/561688620598358?ref=dp (accessed May 3, 2018).

34.     Finally, at the bottom of page with instructions on managing or turning off contact uploading, it states "Turning off contact uploading in the Facebook app doesn't automatically turn off contact uploading or call and SMS (text messaging uploading in the Messenger app. Learn how to manage contact uploading on Messenger. [Hyperlink]. That link is broken; clicking on it brings up the message "Page could not be found." *See* https://www.facebook.com/help/www/355489824655936?helpref=faq_content (accessed May 3, 2018).

35.     Facebook's updated Data Use Policy provisions on contact, call log, and text log uploading, with its multiple steps, multiple pages, and broken hyperlinks, continues to be misleading and deceptive to Android users.

36.     Plaintiff and Class members relied on the statements in Facebook's Data Use Policy about what information Facebook would collect and use. In so doing, Plaintiff and Class members used their Android mobile devices without knowing that Facebook was "scraping" their Personal Communications Information.

37.     The policy of collecting and using Personal Communications Information as alleged herein has violated the privacy of millions of people in every state.

38.    The Terms of Service agreement between Facebook and its users specifies that "the laws of the State of California will govern these Terms and any claim, without regard to conflict of law provisions." Facebook Terms of Service, at www.facebook.com/legal/terms/update?ref=old_policy (accessed April 25, 2018). For that reason, the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) and the California Consumer Legal Remedies Act (Cal. Civil Code § 1750 *et seq.*) apply to all class members.

## V.    CLASS ALLEGATIONS

39.    Plaintiff brings this action on behalf of herself and all others similarly situated as Class Members pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

40.    Plaintiff seeks to represent a class defined as follows:

> **All persons in the United States who accessed their personal Facebook accounts using the Facebook application on mobile phones they owned that used the Android operating system between April 2015 and April 2018, excluding Defendant, its officers, directors, and employees.**

41.    Plaintiff is a member of the Class he seeks to represent, as he accessed his personal Facebook account via the Facebook application on his Samsung S7 Edge mobile device, which uses the Android operating system.

42.    Plaintiff does not know the exact number of Class members because such information is in exclusive control of Facebook. While the precise number of Class members and their identities are currently unknown to Plaintiff, they are known to Facebook and will be determined through discovery. Plaintiff believes that, due to the nature of the trade and commerce involved, there are likely millions of Class members. Plaintiff believes that the members of the Class are so numerous that their individual joinder herein is impracticable.

43.    This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

a.    Whether Facebook gave Plaintiff and Class members effective notice of its program to collect their Personal Communications Information;

b. Whether Facebook obtained consent from Plaintiff and Class members to collect their Personal Communications Information;

c. Whether Facebook improperly collected Plaintiff's and Class members' Personal Communications Information;

d. Whether Facebook owes any duty to Plaintiff and Class members with respect to maintaining, securing, or deleting their Personal Communications Information;

e. To what degree Facebook has the right to use Personal Communications Information pertaining to Plaintiff and Class members;

f. Whether Facebook owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Communications Information;

g. Whether Facebook breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Communications Information;

h. Whether Facebook's conduct was an unlawful, unfair, and/or fraudulent business practice under Cal. Bus. & Prof. Code § 17200 *et seq.*;

i. Whether Facebook's conduct violated § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq.*;

j. Whether Facebook's conduct violated Cal. Civ. Code § 1750 *et seq.*;

k. Whether Facebook's conduct violated the Electronic Communications Privacy Act, 18 U.S.C. § 2510 et *seq.*,

l. Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution/disgorgement; and

m. Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

44.    Facebook engaged in a course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the members of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual

1   questions, if any, pale in comparison in both quantity and quality to the numerous common

2   questions that dominate this action.

3        45.    Plaintiff's claims are typical of the claims of other members of the Class because,

4   among other things, Plaintiff and other Class members were injured through the substantially

5   uniform misconduct of Defendant.  Plaintiff is advancing the same claims and legal theories on

6   behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff.

7   The claims of Plaintiff and those of other Class members arise from the same operative facts and are

8   based on the same legal theories.

9        46.    Plaintiff will fairly and adequately represent the interests of the Class because he is a

10  member of the proposed Class and has no conflict with any of the other Class members he seeks to

11  represent. Plaintiff is represented by competent counsel experienced in consumer protection class

12  actions and other complex litigation who intend to prosecute this action vigorously for the benefit of

13  the proposed Class.

14       47.    A class action is superior to any other available means for the fair and efficient

15  adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

16  management of this matter as a class action.  The damages, harm, or other financial detriment

17  suffered individually by Plaintiff and the other members of the Class are relatively small compared

18  to the burden and expense that would be required to litigate their claims on an individual basis

19  against Facebook, making it impracticable for Class members to individually seek redress for

20  Facebook's wrongful conduct.  Even if Class members could afford individual litigation, the court

21  system could not.  Individualized litigation would create a potential for inconsistent or contradictory

22  judgments and increase the delay and expense to all parties and the court system.  By contrast, the

23  class action device presents far fewer management difficulties and provides the benefits of single

24  adjudication, economies of scale, and comprehensive supervision by a single court.

25       48.    Further, Facebook has acted or refused to act on grounds generally applicable to the

26  Class, and accordingly, final injunctive or corresponding declaratory relief with regard to the

27  members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil

28  Procedure.

## VI.    CLAIMS

### First Claim for Relief

**Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice
(Cal. Bus. & Prof. Code § 17200 *et seq.*)**

49.    Plaintiff incorporates by reference the allegations above as though fully stated herein.

50.    Plaintiff is a "person" within the meaning of the UCL.

51.    Plaintiff, an out-of-state resident, may bring an action under the UCL because he was injured by acts occurring in California.

52.    By reason of the conduct alleged herein, Facebook engaged in "unlawful business practices" within meaning of the UCL.

53.    Facebook improperly collected and stored Plaintiff's and Class members' Personal Communications Information for its own use without authorization or in excess of any authorization it might have obtained.

54.    Facebook did not disclose to users of Android mobile devices the material fact that the Personal Communications Information generated when they were not using the Facebook app would nevertheless be collected and stored on Facebook's servers for Facebook's use.

55.    Facebook mispresented in its Data Use Policies what data it could and did access, collect, store, and use.

56.    In using their Android mobile devices containing the Facebook app, Plaintiff and Class members relied on Facebook's misrepresentations about data collection in its Data Use Policies.

57.    Facebook's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, the California Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; Cal. Bus. & Prof. Code § 22576 (as a result of Facebook failing to comply with its own posted policies); the Federal Trade Commission Act, 15 U.S.C. § 45(a); and the Electronic Communications Protection Act, 18 U.S.C. § 2510 *et seq.* and thus constitute unlawful business practices under the UCL.

58.     Plaintiff and Class members suffered injury-in-fact and lost money or property as the result of Facebook's unlawful business practices because: (a) Plaintiff and Class members suffered an invasion of privacy as a result of Facebook collecting their Personal Communications Information; and (b) Plaintiff and Class members were deprived of any income that Facebook generated through its unauthorized use or sale of their Personal Communications Information.

59.     As a result of Facebook's unlawful business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

### Second Claim for Relief

**Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice
(Cal. Bus. & Prof. Code § 17200 *et seq.*)**

60.     Plaintiff incorporates the allegations above as if fully set forth herein.

61.     Plaintiff is a "person" within the meaning of the UCL.

62.     Plaintiff, an out-of-state resident, may bring an action under the UCL because he was injured by acts occurring in California.

63.     By reason of the conduct alleged herein and its tendency to deceive users into believing their Personal Communications Information was not being accessed and used, Facebook engaged in "unfair business practices" within the meaning of the UCL.

64.     Facebook improperly collected and stored Plaintiff's and Class members' Personal Communications Information for its own use without authorization or in excess of any authorization it might have obtained, while simultaneously representing that this Personal Communications Information would remain private.

65.     Facebook did not disclose to users of Android mobile devices the material fact that the Personal Communications Information generated when they were not using the Facebook app would nevertheless be collected and stored on Facebook's servers for Facebook's use.

66.     Facebook mispresented in its Data Use Policies what data it could and did access, collect, store, and use.

67.     In using their Android mobile devices containing the Facebook app, Plaintiff and Class members relied on Facebook's misrepresentations about data collection in its Data Use Policies.

68.     Plaintiff and the other Class members had no way of reasonably knowing that Facebook was collecting their Personal Communications Information without authorization. Thus, they could not have reasonably avoided the injury each of them suffered.

69.     There is no benefit to consumers or competition from deceptively collecting Plaintiff's and Class members' Personal Communications Information.

70.     The gravity of the consequences of Facebook's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, and is substantially injurious to Plaintiff and other Class members.

71.     Plaintiff and Class members suffered injury-in-fact and lost money or property as a result of Facebook's unfair business practices because: (a) Plaintiff and Class members suffered an invasion of privacy as a result of Facebook collecting their Personal Communications Information; and (b) Plaintiff and Class members were deprived of any income that Facebook generated through its unauthorized use or sale of their Personal Communications Information.

72.     As a result of Facebook's unfair business practices, Plaintiff and Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

**Third Claim for Relief**

**Violation of California's Unfair Competition Law ("UCL") – Fraudulent Business Practice (Cal. Bus. & Prof. Code § 17200 *et seq.*)**

73.     Plaintiff incorporates the substantive allegations described above as if fully set forth herein.

74.     Plaintiff is a "person" within the meaning of the UCL.

75.     Plaintiff, an out-of-state resident, may bring an action under the UCL because he was injured by acts occurring in California.

76.     By reason of the conduct alleged herein, Facebook engaged in "fraudulent business practices" within the meaning of the UCL.

77.     Facebook stored Personal Communications Information on its electronic and consumer information databases.  Facebook falsely and knowingly represented to Plaintiff and Class members that their personal information would remain private.  Facebook engaged in fraudulent business practices by representing that they would not use Plaintiff's and Class members' personal information without authorization, and by obtaining their Personal Communications Information without authorization.

78.     Facebook's statements that it would maintain the confidentiality of Plaintiff's and Class members' private information were false because Facebook knowingly and intentionally accessed, stored, and used that information, which it did for its own advantage and commercial profit, without permission from Plaintiff and Class members.

79.     As more fully described above, Facebook's statements and omissions about its collection of Personal Communications Information was likely to deceive reasonable consumers. Indeed, Facebook led Plaintiff and Class members to believe that it was not collecting Personal Communications Information, when it was in fact doing so.  Said acts are fraudulent business practices.

80.     Plaintiff and Class members justifiably relied on the representations Facebook made in its privacy policies and did so to their detriment.

81.     Plaintiff and Class members had no way of reasonably knowing that Facebook was collecting their call logs and text data without authorization.  Thus, they could not have reasonably avoided the injury each of them suffered.

82.     There is no benefit to consumers or competition from fraudulently collecting Personal Communications Information.

83.     The gravity of the consequences of Facebook's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, and is substantially injurious to Plaintiff and other Class members

84.     Plaintiff and Class member suffered injury-in-fact and lost money or property as the proximate result of Facebook's fraudulent business practices because: (a) Plaintiff and Class members suffered an invasion of privacy as a result of Facebook collecting their Personal Communications Information; and (b) Plaintiff and Class members were deprived of any income that Facebook generated through its unauthorized use or sale of their Personal Communications Information.

85.     As a result of Facebook's fraudulent business practices and violations of the UCL, Plaintiff and Class members are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

## Fourth Claim for Relief

### Violation of California's Consumer Legal Remedies Act ("CLRA")
### (Cal. Civ. Code § 1750 *et seq.*)

86.     Plaintiff incorporates the substantive allegations described above as if fully set forth herein.

87.     Facebook is a "person" within the meaning of CLRA in that it is a corporation

88.     Plaintiff and Class members are "consumers" within the meaning of CLRA in that they are individuals who seek or acquire services for personal, family, or household purposes.

89.     Plaintiff, an out-of-state resident, may bring an action under the UCL because he was injured by acts occurring in California.

90.     Facebook's conduct as alleged herein violates CLRA's ban of proscribed practices at Cal. Civ. Code § 1770(a) in that, among other things:

    a.  Facebook misrepresented the characteristics and benefits of its services by not disclosing, and actively obscuring, that Facebook uses its service as a mechanism to obtain Personal Communications Information without users' knowing consent; and

    b.  Facebook advertised its services with the intent not to provide them as advertised, including with respect to compliance with its terms of service.

91.    In using their Android mobile devices containing the Facebook app, Plaintiff and Class members relied on Facebook's misrepresentations about data collection in its Data Use Policies.

92.    As a direct and proximate result of Facebook's misrepresentations and omissions, Plaintiff and Class members suffered injuries because: (a) Plaintiff and Class members suffered an invasion of their privacy as a result of Facebook collecting their Personal Communications Information without authorization; and (b) Plaintiff and Class members were deprived of any income Facebook generated through its unauthorized use or sale of their Personal Communications Information.

93.    Plaintiff and Class members seek equitable relief for Facebook's violation of CLRA, as permitted by statute.  This includes injunctive relief to enjoin the wrongful practices alleged herein, and to take corrective action to remedy past conduct, including deleting the wrongfully obtained Personal Communications Information.  Plaintiff and Class members also seek restitution and/or disgorgement as permitted by law, as well as statutory attorney fees.

94.    Plaintiff and Class members reserve the right to give written notice of this claim via certified mail per statute, and to thereafter seek damages via amended complaint.

**Fifth Claim for Relief**

**Violation of the Electronic Communications Privacy Act ("ECPA")**
**(18 U.S.C. § 2510 *et seq.*)**

95.    Plaintiff incorporates the substantive allegations described above as if fully set forth herein.

96.    By intentionally intercepting Plaintiff's and Class members' Personal Communications Information and intentionally using that information for its own advantage and profit, Facebook violated the ECPA, 18 U.S.C. § 1510 *et seq.*

97.    Facebook is a "person" under 18 U.S.C. § 2510(6) of the ECPA because it is a corporation.

98.    Plaintiff's and Class members' Personal Communications Information constitute "electronic communications" under 18 U.S.C. § 2510(12) of the ECPA because the call and text

histories (including metadata such as the names and number of persons contacted and duration of the contact) are electronically-transmitted data affecting interstate or foreign commerce.

99.    Facebook "intercepted" Plaintiff's and Class members Personal Communications Information within the meaning of 18 U.S.C. § 2510(4) of the ECPA because Facebook accessed and acquired the data electronically and stored it on its own servers.

100.    Plaintiff and Class members did not give Facebook prior consent for such interception of their Personal Communications Information as described in 18 U.S.C. § 2511(2)(d) of the ECPA.  In fact, Facebook's access, collection, storage, and use of Plaintiff's and Class members' Personal Communications Information well exceeded any authorization from any party to the personal data.

101.    As a result of Facebook's violations of the ECPA, pursuant to 18 U.S.C. § 2520, Plaintiff and Class members are entitled to (1) preliminary and other equitable or declaratory relief as may be appropriate; (2) actual damages or statutory damages of the greater of $100 a day for each violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court enter an Order:

      a.  Certifying a nationwide Class under Rule 23 of the Federal Rules of Civil Procedure, and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

      b.  Finding that Defendant's conduct is unlawful as alleged herein;

      c.  Enjoining Defendant from engaging in further unlawful conduct as alleged herein;

      d.  Awarding Plaintiff and Class members compensatory, punitive, and statutory damages as allowed by law;

      e.  Awarding Plaintiff and Class members restitution, disgorgement, and all other forms of equitable monetary relief; and

      f.  Awarding Plaintiff and Class members their reasonable attorneys' fees and expenses.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.


Dated:  May 9, 2018                          Respectfully submitted,


                                             /s/ Hassan A. Zavareei
                                             Hassan A. Zavareei (California Bar No. 181547)
                                             **TYCKO & ZAVAREEI LLP**
                                             1828 L Street, NW- Suite 1000
                                             Washington, D.C 20036
                                             Telephone: (202) 973-0900
                                             Facsimile: (202) 973-0950
                                             Email hzavareei@tzlegal.com

                                             Kristen L. Sagafi (California Bar No. 222249)
                                             **TYCKO & ZAVAREEI LLP**
                                             483 Ninth Street, Suite 200
                                             Oakland, CA 94607
                                             Telephone: (510) 254-6808
                                             Facsimile: (510) 210-0571
                                             Email: ksagafi@tzlegal.com


                                             Jonathan M. Jagher (*Pro Hac Vice* to be filed)
                                             Jeffrey L. Kodroff (*Pro Hac Vice* to be filed)
                                             John A. Macoretta (*Pro Hac Vice* to be filed)
                                             Diana J. Zinser (*Pro Hac Vice* to be filed)
                                             **SPECTOR ROSEMAN & KODROFF, P.C.**
                                             1818 Market Street, Suite 2500
                                             Philadelphia, PA 19312
                                             Telephone: (215) 496-0300
                                             Facsimile: (215) 496-6611
                                             Email: JJagher@srkattorneys.com
                                             Email: JKodroff@srkattorneys.com
                                             Email: JMacoretta@srkattorneys.com
                                             Email: DZinser@srkattorneys.com


                                             *Counsel for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT